174 August 12, 2026 No. 763

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of T. L. E.,
a Person Alleged to be Extremely Dangerous
with Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

T. L. E.,
*Appellant.*

Washington County Circuit Court
24CC02876; A185022

Janelle F. Wipper, Judge.

Argued and submitted December 2, 2025.

Christopher J. O'Connor argued the cause for appellant. Also on the brief was Multnomah Defenders, Inc.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Appellant appeals a civil commitment judgment, which committed him to the custody of the Psychiatric Security Review Board (PSRB) for a period not to exceed 24 months. The commitment was based on the trial court's determination that appellant was an extremely dangerous person with a mental illness. ORS 426.701(3) (2023), *amended by* Or Laws 2025, ch 58 § 5, ch 175 § 5, ch 559 § 37.[1] In challenging his commitment, appellant raises three assignments of error. First, appellant argues that, under the logic of *State v. T. C.*, 327 Or App 558, 536 P3d 591 (2023), *rev den*, 371 Or 825 (2024), the trial court violated his right to notice under ORS 426.701(2)(a) (2023) and due process because the record does not indicate that he received immediate, personal notice of the civil commitment proceeding. Second, appellant contends that the trial court erred by not informing him of his hearing rights under three separate statutory provisions: ORS 426.701(2)(c) (2023), ORS 426.701(2)(d) (2023), and ORS 426.100(1) (2023), *amended by* Or Laws 2025, ch 559, § 12. Appellant concedes that his first two assignments of error are unpreserved, but requests plain-error review. In his third, preserved assignment of error, appellant asserts that the state failed to produce sufficient evidence to demonstrate that he is an "extremely dangerous" person. ORS 426.701(1)(a) (2023); 426.701(3)(a)(A) (2023).

First, we conclude that the rule from *T. C.* that appellant invokes does not apply in this case, because *T. C.* involved an entirely different notice statute and set of facts than the case at bar. Next, we determine that appellant's first assignment of error is not "plain error," because it is neither obvious nor apparent on the record that appellant was denied the statutorily required notice. Further, we determine that the trial court did not plainly err with regards to the advisement of appellant's hearing rights. And finally, we determine that, given the evidence of appellant's persistent and severe psychotic symptoms within the hospital setting,

---

[1] The legislature recently made amendments to the civil commitment statutes, including ORS 426.701, which became operative on January 1, 2026. Or Laws 2025, ch 58 § 5, ch 175 § 5, ch 559, §§ 37, 66. However, our analysis is based on the previous version of the statutes that appellant was committed under.

the record was sufficient to support the court's "extremely dangerous" finding. As a result, we affirm.

We are "bound by the trial court's findings of historical fact that are supported by any evidence in the record." *State v. B. B.*, 240 Or App 75, 77, 245 P3d 697 (2010). We therefore state the relevant facts "consistently with the trial court's express and implied findings, as supplemented with uncontroverted contextual information from the record." *Id.* (citation and internal quotation marks omitted).

Appellant has schizoaffective disorder, bipolar type, which causes him to have hallucinations, delusions, and psychotic thoughts. Appellant was charged with second-degree murder and unlawful use of a weapon after he stabbed his wife in the throat multiple times, killing her, while experiencing those symptoms of his mental disorder. Although appellant admitted to the killing, he was found mentally unfit to stand trial. In 2021, the Oregon State Hospital admitted appellant, and he underwent three years of restorative treatment. In 2024, the State Hospital found him unable to aid and assist in his defense and found that there was no substantial probability that, in the foreseeable future, appellant would gain the capacity to stand trial due to the severity of his mental disorder.

Thereafter, the state filed a petition under ORS 426.701 (2023) to civilly commit appellant as an extremely dangerous person with a mental illness. One day later, at a status hearing held on both appellant's criminal and civil commitment cases, the court met with the prosecutor and appellant's criminal defense counsel, who was from the same public defender's office as his civil-commitment counsel. Appellant did not attend, as he was in the State Hospital.

At that hearing, the following exchange took place between the attorneys:

> "[PROSECUTOR]: *** Because he's representing the other [criminal] matter, I had a copy of the [civil commitment] petition served on Defense counsel because I didn't think there was an issue, me trying to serve it on [appellant] like without the attorney. So I just did the safest thing and basically served it on the representative, because I didn't know how else to do it ethically.

"[CRIMINAL DEFENSE COUNSEL]: And we'll accept service on behalf of [appellant]."

The prosecutor indicated that he would fix a typological error on the petition, to ensure that the correct, amended petition was "the copy [that] goes down [to] the State Hospital," which appellant's criminal defense counsel assented to. Appellant's criminal defense counsel then stated,

"I believe I will be speaking with [appellant] sometime today. If not, I will make sure to do that tomorrow and let him know that we have accepted service on this new case, the petition for the finding of an extremely dangerous person and continued commitment under the PSR[B]. We will make sure that we send him down a copy of that and then keep him apprised of his counsel, as well as the requirements for that finding and what it means."

About two weeks prior to the civil commitment hearing, a mental health examiner evaluated appellant in the presence of his civil-commitment counsel. *See* ORS 426.110 (requiring the appointment of an examiner for purposes of an ORS 426.701 (2023) hearing). During the interview, appellant was polite, open, and forthcoming. He stated that he experienced hallucinations and delusions on a daily basis, and that he feared his psychotic thoughts. Among other things, he hallucinated screaming banshees and witches, and, at times, believed that he was dead or denied that his wife was deceased. And although he indicated that he was not experiencing hallucinations that directed him to harm others at the time of the interview, he shared that he "sometimes" wanted to hurt or kill other people.

Based on her interview and her review of appellant's criminal and medical history, the examiner wrote a report that recommended his civil commitment due to the severity of and extreme risk of serious danger posed by his mental disorder. She noted that appellant's psychotic symptoms persisted "even under well evaluated and well supervised medication trials, careful changes to treatment and adjustments and dosing over many years' time."

Appellant's civil-commitment counsel filed a motion to dismiss the petition a few days before the civil commitment

hearing, raising a due process challenge to ORS 426.701 (2023).

At the civil commitment hearing, the examiner, as the sole witness, testified on appellant's condition and level of risk. The state also submitted the examiner's report, police reports related to the homicide of appellant's wife, and nine of appellant's mental health evaluations from his three-year hospitalization into the record.

Based on the examiner's testimony and the submitted records, the court found, by clear and convincing evidence, that appellant is "extremely dangerous" due to a qualifying mental disorder, specifically, schizoaffective disorder, bipolar type. The court cited evidence of appellant's treatment-resistant hallucinations, delusions, and psychotic thoughts. The court also discussed appellant's aggressive conduct throughout his hospitalization, which included verbal altercations, threats of bodily harm, and physical violence. Some of appellant's behaviors necessitated hospital staff's employment of restrictive interventions and de-escalation techniques. The court determined that that evidence, coupled with the circumstances of the underlying homicide, provided clear and convincing evidence that appellant "presents a serious danger to the safety of others by reason of an extreme risk that the person will inflict grave or potential lethal physical injury on other persons, and unless committed, will continue to represent this extreme risk to the safety of other persons in the foreseeable future." It therefore ordered appellant's commitment to the PSRB's jurisdiction under ORS 426.701(3)(a) (2023). This appeal followed.

## I.   FIRST ASSIGNMENT OF ERROR

Appellant argues that the trial court plainly erred by committing him without him receiving proper notice of the civil commitment proceeding, in violation of ORS 426.701(2)(a) (2023) and due process under the Fourteenth Amendment of the United States Constitution. An error is plain if it is "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). That is, "the facts constituting

the error must be irrefutable." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991).

Broadly speaking, "prehearing notice is a core component of the due process protections afforded by the Fourteenth Amendment." *T. C.*, 327 Or App at 562. To comply with due process, prehearing notice must "be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and must also advise of the specific issues that the person must meet." *Id.* (brackets and internal quotation marks omitted). And given the potential "massive curtailment of liberty" inherent to civil commitment proceedings, we have held that the failure to provide prehearing notice constitutes "reversible error unless the record allows for the affirmative inference that the appellant waived the procedural protection *** or, alternatively, received a functionally equivalent protection in a different form." *Id.* at 563.

For persons believed to be extremely dangerous with a mental illness, the due process right to notice is codified in ORS 426.701(2) (2023). *Cf. id.* at 562 (concluding the same as to ORS 426.090 (2023), *amended by* Or Laws 2025, ch 559, § 11, which applies to persons believed to have a mental illness).[2] As relevant to appellant's first assignment, ORS 426.701(2)(a) (2023) states:

> "A district attorney may petition the court to initiate commitment proceedings *** if there is reason to believe a person is an extremely dangerous person with mental illness. *** *The petition shall immediately be served upon the person.*"[3]

(Emphasis added.)

_____

[2] Before the most recent amendment in 2025, Or Laws 2025, ch 559, § 11, the legislature had not amended ORS 426.090 since 2013, Or Laws 2013, ch 360, § 22. The court in *T. C.* analyzed the version of ORS 426.090 that was current between the 2013 amendment and the 2025 amendment. For ease of reference, we therefore cite ORS 426.090 (2023) as the version that *T. C.*'s analysis pertains to.

[3] In full, ORS 426.701(2)(a) (2023) states:

> "A district attorney may petition the court to initiate commitment proceedings described in this section if there is reason to believe a person is an extremely dangerous person with mental illness. Venue is proper in the county in which the person is alleged to have committed the qualifying act or the county in which the person lives. The petition shall immediately be served upon the person."

The core of appellant's argument is that under *T. C.*, the state's service of the petition upon appellant's criminal defense attorney was insufficient to satisfy the ORS 426.701(2)(a) (2023) notice requirement and due process. As we explain, however, it is far from obvious and beyond reasonable dispute that *T. C.* applies in the manner that appellant asserts. Further, because the record can plausibly be read to indicate that appellant received the petition soon after the state served the petition upon his criminal defense counsel, we conclude that it is not apparent that appellant was denied "immediate[]" personal notice in a manner consistent with ORS 426.701(2)(a) (2023). *See State v. Higgins*, 258 Or App 177, 181, 308 P3d 352 (2013), *rev den*, 354 Or 700 (2014) (explaining that "'competing inferences,' for purposes of plain error analysis *** must be plausible").

In *T. C.*, we considered whether a trial court had provided the appellant, a person alleged to have a mental illness, with the procedural due process protection set out in ORS 426.090 (2023). 327 Or App at 561-71. That statute requires the trial court to issue a citation containing, among other things, "the specific reasons the person is believed to be a person with mental illness," and the time and place of the commitment hearing. Importantly, ORS 426.090 (2023) also mandates that the citation "be served upon the person [alleged to have a mental illness] *** *in person* prior to the hearing." (Emphasis added.) In other words, the statute "confers upon a 'person alleged to have a mental illness' a right to prehearing, *in-person*, written notice of a proposed civil commitment proceeding." *Id.* at 562 (emphasis added).

In that case, because the trial court had provided the citation only to the appellant's civil-commitment counsel and there was no evidence that it was ever served upon the appellant "in person," the state conceded that the appellant had not received the requisite notice under ORS 426.090 (2023). *Id.* at 560-61. And because the record did not demonstrate that the appellant had waived her right to prehearing notice or was "apprised of the nature of the proceeding, had an opportunity to confer with her lawyer ahead of the hearing, and otherwise had a fair opportunity to prepare for it" such that any statutorily deficient notice was harmless, we

concluded that the court had plainly erred and reversed her commitment. *Id.* at 564-65, 571.

T. C. does not aid appellant here because that case presented distinct legal and factual issues. To start, *T. C.*'s analysis was focused upon an entirely different statute and statutory framework than that at issue here. ORS 426.090 (2023), the statute discussed in *T. C.*, relates to civil commitment proceedings for persons alleged to have a mental illness. In contrast, ORS 426.701 (2023), the relevant statute in this case, is one of two statutes pertaining to civil commitment proceedings specifically for persons alleged to be "extremely dangerous" with a mental illness. *See State v. A. B. K.*, 323 Or App 246, 255, 522 P3d 894 (2022) (describing the commitment of an extremely dangerous person with a mental illness as involving a "different statutory framework" than the commitment of a person with a mental illness).

Further, ORS 426.701(2)(a) (2023) is materially different from ORS 426.090 (2023). ORS 426.701(2)(a) (2023) omits the "in person" language contained in ORS 426.090 (2023), which cautions us against importing that heightened notice requirement into the former statute, particularly on plain-error review. *See State v. Bailey*, 346 Or 551, 562, 213 P3d 1240 (2009) ("Generally, when the legislature includes an express provision in one statute and omits the provision from another related statute, we assume that the omission was deliberate."); *see also State v. Johnson*, 329 Or App 57, 63, 540 P3d 73 (2023) (determining that resolving a legal issue of first impression, which would require "an in-depth analysis of statutory text, context, and legislative history," exceeded the bounds of plain-error review).

For the above reasons, we decline to apply *T. C.*'s analysis under ORS 426.090 (2023) in assessing the sufficiency of the notice afforded to appellant in this case. Instead, we evaluate the provided notice against the plain terms of ORS 426.701(2)(a) (2023), which requires only that the petition "immediately be served upon the person."

Here, the record permits a plausible inference that appellant received the amended petition within days of its filing. As a result, it is neither "obvious" nor "apparent on

the record" that there was a failure to comply with the ORS 426.701(2)(a) (2023) notice requirement. As such, there is no plain error.

To be sure, there is no direct evidence, such as a return of service or other signed document, establishing appellant's receipt of the petition. However, abundant circumstantial evidence supports an inference that that occurred. *See Hendricks v. Sanford*, 216 Or 149, 156, 337 P2d 974 (1959) ("Circumstantial evidence may establish a fact as well as direct evidence."). Among other things, appellant's criminal defense counsel, who was from the same public defense office as his civil-commitment counsel, expressly accepted service of the petition on appellant's behalf the day after its filing, after which the prosecutor indicated that he would provide a copy of the amended petition to "go[] down [to] the State Hospital." Furthermore, appellant's criminal defense counsel indicated that he would speak to appellant either that day or the following day, ensure that appellant was apprised of the civil commitment proceeding and the allegations against him, and "make sure that we send [appellant] down a copy" of the amended petition. Finally, we note that because ORS 426.701(2)(a) (2023) does not require that proof of notice be filed with the court, it is difficult for appellant to establish that he was irrefutably denied "immediate[]" personal notice without having objected below. *See State v. B. M.*, 347 Or App 763, 768, 589 P3d 209 (2026) (noting the difficulty of prevailing on plain-error review where the record suggested that the appellant *might* have received prehearing notice, but we could not "know for sure whether that happened" because no objection had spurred a clarification of the record).

In sum, it is not obvious that ORS 426.701 (2023) required appellant to receive "in person" prehearing notice like that articulated in *T. C.*, nor is it apparent on this record that appellant was deprived of the notice mandated by ORS 426.701(2)(a) (2023). Therefore, appellant has not established that the trial court plainly erred in committing appellant without the required notice.[4]

---

[4] Even assuming *arguendo* that the described manner of notice would not strictly comply with the ORS 426.701(2)(a) (2023) notice requirement, we further observe that it is not obvious that there was a failure to provide appellant with "functionally equivalent" notice for due process purposes. This is not a case

## II.   SECOND ASSIGNMENT OF ERROR

Appellant argues that the trial court plainly erred by not informing him of his rights prior to the hearing. Specifically, appellant argues that he was not properly informed of his rights in writing under three separate statutory provisions: ORS 426.701(2)(c) (2023), ORS 426.701(2) (d) (2023), and ORS 426.100(1) (2023). We address each in turn.

First, ORS 426.701(2)(c) (2023) expressly requires that certain information be communicated in writing to a person believed to be extremely dangerous with a mental illness who is subject to a civil commitment proceeding. The statute states:

> "The person shall be advised in writing of:
>
> "(A)   The allegation that the person is an extremely dangerous person with mental illness and may be committed to the jurisdiction of the Psychiatric Security Review Board for a maximum period of 24 months; and
>
> "(B)   The right to a hearing to determine whether the person is an extremely dangerous person with mental illness, unless the person consents to the commitment by waiving the right to a hearing in writing after consultation with legal counsel."

It is undisputed that the amended petition contained the above information. And as we have already explained, the record gives rise to a plausible inference that appellant received the amended petition prior to the hearing, in which case he would have been advised of his rights in accord with ORS 426.701(2)(c) (2023).

Second, ORS 426.701(2)(d) (2023), enumerates a host of hearing rights granted to a person believed to be

where there is a complete lack of evidence that appellant was afforded prehearing notice. In addition to the aforementioned facts, appellant was accompanied by his two civil commitment attorneys when he participated in a mental health examination two weeks prior to the hearing, and one of those attorneys later filed a prehearing motion to dismiss. *Cf. T. C.*, 327 Or App at 564 (noting, in reversing the appellant's commitment for lack of notice, that "[t]he record contain[ed] *no* indication that [the] appellant met with her civil-commitment attorney in advance of the hearing" (emphasis added)). Thus, on this record, it is plausible that appellant was provided notice in accord with due process such that any statutory violation was harmless.

extremely dangerous with a mental illness. But, the statute does not require that those rights be communicated to a person in writing, or otherwise. Instead, ORS 426.701(2)(d) (2023) states only that the person "shall have" the right to counsel, to subpoena witnesses and offer evidence, to cross-examination, and to examine all reports, documents, and information that the court considers.[5] Because there is no statutory requirement for a court to provide that information to the person, the trial court did not plainly err by not informing appellant of those rights, in writing or otherwise. Further, the trial court's failure to inform appellant of those rights did not amount to an obvious due process violation, because due process is concerned with the right to notice that apprises a party of the nature and substance of the proceeding against them and an opportunity to be heard, rather than the advisement of rights. *See Dept. of Human Services v. K. L.*, 272 Or App 216, 223, 355 P3d 926 (2015) (describing what procedural due process requires); *B. M.*, 347 Or App at 768 (declining, in a civil commitment proceeding, to "exercise our discretion to reverse based on an unpreserved claim of error that does not obviously rise to the level of a due process violation").

Third, it is not obvious that the trial court was required to follow ORS 426.100(1) (2023), which obligates a court to advise a person alleged to have a mental illness of certain rights.[6] ORS 426.100 (2023) is part of a different

---

[5] In full, ORS 426.701(2)(d) (2023) reads,

"A person against whom a petition described in this subsection is filed shall have the following:

"(A) The right to obtain suitable legal counsel possessing skills and experience commensurate with the nature of the allegations and complexity of the case and, if the person is without funds to retain legal counsel, the right to have the court appoint legal counsel;

"(B) The right to subpoena witnesses and to offer evidence on behalf of the person at the hearing;

"(C) The right to cross-examine any witnesses who appear at the hearing; and

"(D) The right to examine all reports, documents and information that the court considers, including the right to examine the reports, documents and information prior to the hearing, if available."

[6] ORS 426.100(1) (2023) states:

"At the time the person alleged to have a mental illness is brought before the court, the court shall advise the person of the following:

statutory framework than that which appellant was sub-
jected to, as a person alleged to be an extremely dangerous
person with a mental illness, ORS 426.701 (2023). Therefore,
any failure of the court to comply with ORS 426.100(1) (2023)
was not plain error.

## III.   THIRD ASSIGNMENT OF ERROR

In his third assignment of error, appellant argues
that insufficient evidence supported the trial court's deter-
mination that appellant was an "extremely dangerous" per-
son at the time of the commitment hearing. To civilly commit
a person under ORS 426.701 (2023), a court must find that
the person is "extremely dangerous" by clear and convincing
evidence. ORS 426.701(3)(a)(A) (2023). And as relevant here,
an "extremely dangerous" person is one that,

> "Because of a qualifying mental disorder:
>
> "(i)   Presents a serious danger to the safety of other
> persons by reason of an extreme risk that the person
> will inflict grave or potentially lethal physical injury on
> other persons; and
>
> "(ii)   Unless committed, will continue to represent
> an extreme risk to the safety of other persons in the
> foreseeable future."

ORS 426.701(1)(a)(C) (2023).

Appellant does not challenge the court's determi-
nation that his schizoaffective disorder, bipolar type, is a
"qualifying mental disorder" under ORS 426.701 (2023).
Rather, he argues that the record does not demonstrate
that he "[p]resents a serious danger to the safety of other
persons by reason of an extreme risk that the person will
inflict grave or potentially lethal physical injury on other
persons" because of his qualifying mental disorder. He also
argues that the record does not demonstrate that, "[u]nless

---

"(A) The reason for being brought before the court;

"(B) The nature of the proceedings;

"(C) The possible results of the proceedings;

"(D) The right to subpoena witnesses; and

"(E) The person's rights regarding representation by or appointment
of counsel."

committed, [he] will continue to represent an extreme risk to the safety of other persons in the foreseeable future."[7]

"In determining whether the record was sufficient to find by clear and convincing evidence that appellant qualified as an extremely dangerous person, we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. T. L. B.*, 335 Or App 225, 235, 558 P3d 861 (2024), *rev allowed*, 373 Or 556 (2025) (internal quotation marks omitted).

First, we conclude that sufficient evidence supported the trial court's finding that appellant "[p]resents a serious danger to the safety of other persons by reason of an extreme risk that the person will inflict grave or potentially lethal physical injury on other persons." ORS 426.701(1)(a)(C)(i) (2023). An "extreme risk" means that, due to a qualifying mental disorder, "the risk of future physical harm exists in a very high degree"; scientific certainty, however, is not required. *T. L. B.*, 335 Or App at 236.

Due to his schizoaffective disorder, bipolar type, appellant experiences psychotic symptoms. Those symptoms played a significant role in his wife's homicide. The record also reflects that appellant has consistently experienced, on a daily basis, psychotic thoughts, hallucinations, and delusions throughout his three-year hospitalization. During his examination, he acknowledged that he "sometimes" wanted to harm or kill others.

---

[7] Although appellant challenges the sufficiency of the evidence to support the trial court's finding that he was exhibiting symptoms that are substantially similar to those preceding the homicide of his wife, that argument is unpreserved and he does not request plain-error review. ORS 426.701(1)(a)(B) (2023). Therefore, we focus our analysis only on ORS 426.701(1)(a)(C)(i) to (ii) (2023). ORAP 5.45(7); *State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) ("[W]e ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so.").

For the same reason, we do not address appellant's unpreserved arguments that insufficient evidence supported the trial court's separate findings that he suffered from a qualifying mental disorder that is resistant to treatment, ORS 426.701(3)(a)(B) (2023), and that he caused the death of another person because of a qualifying mental disorder, ORS 426.701(3)(a)(C)(i) (2023).

In addition, numerous mental health evaluations chronicle appellant's dysregulated and aggressive behaviors throughout his hospitalization. For example, within four months of the hearing, he verbally threatened bodily harm upon another patient, shoved a patient down to the ground, and required restrictive intervention to avoid further escalation and injury.

In sum, given the association between appellant's delusions and his wife's homicide, his ongoing struggle with severe—and potentially violent—psychotic thoughts, and his persistent threatening behavior within the hospital environment, we conclude that there was legally sufficient evidence to support finding that he presents an extreme risk of future "grave or potentially lethal" injury due to his mental disorder.

In arguing that the evidence was legally insufficient, appellant directs us toward the examiner's testimony that she neither "ever fe[lt] a danger" nor used a Plexiglas barrier while interviewing appellant. However, the examiner subsequently explained that she felt safe because two other people were in the room and a third person was outside the room, and that she "would have not done [the examination] just on [her] own." And when considered with the other evidence, the examiner's sense of security within the interview's controlled and very limited environment did not compel the trial court to have reached a different conclusion.

Appellant also points to the lack of a psychiatric risk assessment appraising his future dangerousness and the examiner's acknowledgement that she was unaware and untrained in risk assessment methods. However, a formal risk assessment is not legally required to support an "extreme risk" finding. And, for the reasons already explained, the record in this case adequately supports a finding that appellant presents a "very high" risk of future physical harm.[8]

---

[8] We acknowledge appellant's concerns about the evaluation conducted by the examiner, particularly the fact that the examiner testified that she "skimmed" appellant's records, and that, as a licensed clinical social worker, she is not trained in psychiatric risk assessment methods, psychiatry, or forensic psychology. Although those facts are somewhat concerning, appellant does not put forth an argument as to why they invalidate the evaluation such that the trial court was not permitted to rely on the examiner's testimony and professional conclusions.

We additionally conclude that legally sufficient evidence supported the trial court's finding that appellant, "[u]nless committed, will continue to represent an extreme risk to the safety of other persons in the foreseeable future." ORS 426.701(1)(a)(C)(ii) (2023). In doing so, we reject appellant's argument that the record cannot support an "unless committed" finding because there were "no showings" of his behavior outside of the hospital setting; given the severity and tenacity of appellant's dangerous symptoms within the State Hospital, an exploration of non-hospital alternatives was impractical and unnecessary.

At the hearing, the examiner explained that appellant

> " *** is being treated at a very high level in a very structured environment with a lot of experts, and he continues to have resistance to the treatment. And that resistance does not have to do with him in terms of his compliance. It has to do with the illness itself being so severe[.]"

Indeed, the record shows that even after three years in the highly controlled hospital environment, where appellant has received professional treatment and been subjected to a comprehensive medication regimen, he still has consistently experienced severe psychotic thoughts and exhibited aggressive behaviors. Along with the other evidence supporting the "extreme risk" finding discussed above, that is sufficient to show that "unless committed, [he] will continue to represent an extreme risk" of safety.

Because the evidence was legally sufficient to permit the trial court to determine that appellant is an extremely dangerous person because of a qualifying mental disorder, the trial court did not err in committing him under ORS 426.701(3) (2023).

Affirmed.